Case 3:12-cv-00037   Document 89   Filed in TXSD on 02/05/16   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
February 05, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| VANDAVEN JOHNSON, et al | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 3:12-cv-37 |
| | § | |
| CANAL BARGE COMPANY, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

On February 3, 2012, Plaintiff Vandaven Johnson filed his "Original Collective Action Complaint" alleging that Defendant Canal Barge Company ("Canal Barge") failed to pay him and other tankermen overtime compensation as required by the Fair Labor Standards Act ("FLSA"). On August 8, 2012, Johnson moved to conditionally certify a putative class. Dkt. 22.

Canal Barge moved for summary judgment on Johnson's claims, contending that Johnson's work was that of a seaman and therefore exempt from FLSA overtime requirements. Dkt. 27. This Court initially denied the motion for summary judgment, without prejudice, and granted Johnson's motion to conditionally certify a class. Dkt. 38. 41. Several Canal Barge employees filed notices of consent to join the class. Dkt. 44, 45, 46, 47, 51, 52, 53.

On July 30, 2013, Canal Barge moved to stay this case in light of a strikingly similar case that was proceeding via interlocutory appeal to the Fifth Circuit. Dkt. 63.

The motion to stay was granted and the case was administratively closed, pending the outcome of that appeal. Dkt. 69, 70.

On November 13, 2014, the Fifth Circuit issued its opinion in *Coffin v. Blessey Marine Servs., Inc.*, 771 F.3d 276, 285 (5th Cir. 2014), holding that the loading and unloading duties performed by the vessel-based barge tankermen in that case were the duties of a seaman and therefore exempt from the FLSA's overtime requirements. The stay in this case was lifted, and Canal Barge moved for reconsideration of its earlier summary judgment motion. Dkt. 72. The undersigned granted Canal Barge's motion for reconsideration. Dkt. 80.

Johnson's response to Canal Barge's revived motion now contends that, notwithstanding the Fifth Circuit's opinion in *Coffin*, fact issues prevent summary judgment for Canal Barge. Johnson attempts to distinguish this case from *Coffin* by contending that the summary judgment evidence in this case shows that, unlike in *Coffin*, Johnson's "primary" job duty for Canal Barge was supervising the safe transfer of hazardous liquid cargo to and from barges, not aiding in the operation of Canal Barge's vessels.

## ANALYSIS

Canal Barge's Motion for Summary Judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Under this rule, a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552 (1986). A fact is

"material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id*.

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 348 (5th Cir. 2012) (quoting *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002)); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence). If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-movant to provide "specific facts showing the existence of a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there

is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. "[T]he nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Id*. (quoting *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993)).

> **A. *Coffin v. Blessey* requires a fact-specific analysis of an employee's duties, based upon the character of work actually performed.**

This Court finds that *Coffin v. Blessey* provides the relevant analytical framework for this case. In *Coffin*, a panel of the Fifth Circuit reviewed the district court's denial of summary judgment on the claims of a vessel-based tankerman who sued under the FLSA for overtime pay. 771 F.3d 276 (5th Cir. 2014). The district court denied summary judgment for Blessey on the grounds that loading and unloading a vessel was "in and of itself, without regard to attachment to a specific vessel as seamen for other purposes, nonseaman work as a matter of law." *Id*. at 277-278. The Fifth Circuit vacated and remanded, finding that "the record establishes that these vessel-based tankermen performed only seaman work, making them exempt from the FLSA's overtime provisions." 771 F.3d at 278.

The Fifth Circuit began with a review of the undisputed facts in that case, noting that Blessey's business was that of shipping liquid cargo along inland and oceanic water ways, using a system of a towboat that pushed two tank barges. The towboat was manned by crew who lived and worked on the towboat for 20 days at a time, and generally

worked in 6-hour shifts. The court noted that Blessey's towboats "consisted of a wheelman, a pilot, tankermen, and deckhands," and that Blessey's tankermen had experience as deckhands and performed the nineteen duties of a deckhand, along with additional tasks related to both the maintenance of the barges and the loading and unloading of liquid cargo on the barges. In determining whether such tankermen were employed as a "seaman" and thus exempt from the overtime provisions of the FLSA, the Fifth Circuit first noted that, under the applicable Department of Labor regulations, "[g]enerally, a vessel's crew members are seamen, so long as they meet the criteria of 29 C.F.R. § 783.31." *Id*. at 279 (*i.e.*, "[A]n employee will ordinarily be regarded as employed as a seaman if he performs, as master or subject to the authority, direction, and control of the master aboard a vessel, service which is rendered primarily as an aid in the operation of such vessel as a means of transportation, provided he performs no substantial amount [more than 20% during the work week] of work of a different character."). Accordingly, the Fifth Circuit noted that "the FLSA eschews a fixed meaning of the term seaman" and instead, "[t]he regulations emphasize flexibility, indicating that the term's meaning is governed by the context in which it is used and the purpose of the statute in which it is found." *Id*. at 280 (noting, "Similarly, we must evaluate an employee's duties based upon the character of the work he actually performs and not on what it is called or the place where it is performed. As we have recognized, the FLSA as a whole is pervaded by the idea that what each employee actually does determines its application to him."). The court also noted that such "[i]nquiries into FLSA exempt status 'remain[ ] intensely factbound and case specific,' and we have cautioned that '[e]ach case must be judged on

its own peculiar facts.'" *Id*. at 284 (noting that the seamen exception under the applicable DOL regulation "depends upon the character of the work").

In finding that the loading and unloading performed by the vessel-based plaintiff was seaman work, the Fifth Circuit noted that Coffin was subject to the control of the master of the vessel, and it placed an emphasis on the fact that Coffin was a member of the "marine crew, that is, the crew responsible for operating the ship." *Id*. at 281 (citing *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1104 (7th Cir. 2004)). Further, it was undisputed that Coffin "ate, slept, lived, and worked aboard Blessey's towboats," and that he and other such tankermen were "members of the crew and worked at the direction of the captain." *Id*. at 282. Finally, the plaintiffs did not dispute that their job of loading and unloading liquid cargo had implications for the seaworthiness and efficient movement of Blessey's barges.

The Fifth Circuit distinguished prior cases that had held land-based tankermen were not "seamen" under the FLSA, acknowledging "the presumption that loading and unloading duties are nonseaman work because those duties are usually performed by harbor-based personnel who have little to no role in the barge's navigational mission," but finding that the undisputed facts showed that Coffin and his fellow vessel-based tankermen who were employed by Blessey "performed the loading and unloading duties *as members of a unit tow's crew*." *Id*. at 282 (emphasis added).

### B. Undisputed summary judgment evidence shows Johnson's work is exempt from FLSA overtime requirements.

To support its motion for summary judgment, Canal Barge submitted summary judgment evidence in the form of: (1) declarations by its Vice President of Operations and Technical Services and three of its towboat Captains who worked with Johnson, (2) Johnson's own April and August 2012 declarations, (3) Johnson's Merchant Mariner Credential card with a Tankerman-PIC (Barge) endorsement issued by the United States Coast Guard, and (4) an unverified document that appears to from the U.S. Bureau of Labor Statistics website.

In response, Johnson submitted summary judgment evidence including: (1) a third declaration he executed in September 2015, (2) 51 pages of unauthenticated excerpts from Canal Barge's Operations Policies and Procedures manual, (3) an 82-page deposition of Canal Barge employee Captain Craig H. Jenkins, (4) a 71-page deposition of Canal Barge employee William Thomas Smith, and (5) several other unverified documents and internet printouts.

Taken as a whole, the undisputed summary judgment evidence shows that Canal Barge is a marine transport company that transports, *inter alia*, hazardous liquid cargo on inland waterways and the Gulf Intracoastal Waterway. Canal Barge typically transports such liquid cargo by using a tow configuration of a tugboat pushing two barges. Some of the varieties of hazardous liquid cargo must be temperature-controlled while in transit.

Vessel-based tankermen such as Johnson are assigned to a particular vessel for fourteen-day hitches, and they arrive at the assigned vessels from their homes via rental

cars or taxis. Canal Barge's evidence specifically referred to Johnson's position as that of a "deckhand/tankerman," explaining that Canal Barge's vessel personnel "generally begin their career as a deckhand, gain additional experience and training to promote into a tankerman position, and may ultimately promote into an engineer, pilot or captain position." In fact, captains and pilots aboard the Canal Barge vessels at issue are often themselves licensed tankermen, "and sometimes performed tankering duties when needed."

Johnson was assigned to work on board four separate Canal Barge tow vessels from October 2009 through May 2010. Each of these vessels had similar configurations and crew requirements, and they handled similar jobs of transporting hazardous liquid cargo between points along the waterways, discharging the cargo and then taking on new cargo to be taken to another location. Canal Barge's tow configurations were typically crewed by a Captain, a Pilot, and two deckhand/tankermen such as Johnson. While onboard, Johnson was subject to the authority of the Captain and the Pilot, with the Captain having ultimate authority among the crew. Johnson lived and worked aboard his assigned towboat for the entirety of his 14-day hitch, and he took rotational 6-hour watches with either the Captain or the Pilot. Johnson worked approximately 84 hours in a seven-day work week.

Canal Barge's evidence showed that Johnson's job was that of a vessel crew member with deckhand duties, who also had additional responsibilities related to the loading and unloading of liquid cargo and the maintenance of that cargo during transport. In contrast, Johnson's September 2015 declaration states his belief that his job was, first

and foremost, to supervise the safe loading and unloading of the liquid cargo and being responsible for the safety of the cargo while it was being transported. However, Johnson says nothing about being excused from deckhand duties—in fact, he is wholly silent on such duties and simply contends that he was not responsible for the "the navigation of the vessel." In contrast, Canal Barge submitted evidence that, even while the towboat to which he was assigned pushed barges with hazardous liquid cargo aboard, Johnson's job still included "typical deckhand duties, such as standing watch as a lookout; monitoring and maintaining the tow and its cargo; checking and handling tow lines; splicing lines; putting out navigational lights; grinding, painting and chipping; cleaning the vessel; galley duties; and preparing the tow for approach at locks, docks, and fleets." Canal Barge's evidence showed that, while the towboat was in "standby" and not actually in the process of carrying, loading, unloading, or transferring cargo, Johnson then performed "traditional maritime deckhand duties" at the direction of the Captain or Pilot.

Further, Johnson's conclusory declarations do not directly contradict Canal Barge's evidence that the duties of a vessel-based tankerman while loading, unloading, and transporting hazardous liquid cargo on barges are "service[s] which [are] rendered primarily as an aid in the operation of such vessel as a means of transportation." While the liquid cargo was transferred, Johnson remained on board the barge, and his own evidence shows that during this time, he was in charge of "proper mooring lights" and a red flag warning other vessels, as well as "maintain[ing] stability and minimiz[ing] hull stress during cargo transfers by keeping draft and trim in mind at all times," *i.e.*, ensuring that the barges were safely maintained in their proper position in the water, following

instructions from the Captain or Pilot. Canal Barge submitted uncontradicted evidence that loading the barges in accordance with such instructions ensured that the liquid cargo was loaded safely and ensured the safety of the vessel itself, not just the cargo, and also ensured that the barges could then be safely pushed by the tow boat on which Johnson was a crew member. Johnson's conclusory statements that, "[r]ather than being told I needed to perform my job duties so that the vessel could safely operate on the waterways, I was told I needed to perform my tankerman duties safely so that the cargo, the dock areas, personnel and environment would be protected," and "I don't believe that any of the duties I independently or primarily perform were performed so that Canal Barge's vessels could safely operate on waterways," do not contradict Canal Barge's evidence that Johnson's loading and unloading the liquid cargo implicated the safety of the vessel on which Johnson was a crew member and as well as vessels "both during the transfer and while underway."

     In short, there is ample evidence that Johnson's duties as a vessel-based tankerman involved more than preventing pollution or spills, and that his loading and unloading was done in a manner to ensure the safe positioning of the vessel upon which he was a crew member. During loading and unloading, Johnson was also responsible for handling and monitoring all of the moorings of the barge, adjusting the lines as needed to accommodate the shifting position of the vessel, and anticipating boat traffic and its accompanying wake against the barge. Johnson himself stated that his "tankering" duties included maintaining, repairing, and replacing barge pumps, lines, hoses and other

equipment, and he states that he was responsible for maintaining lines and docking equipment even while the vessels were underway.

Further, in spite of Johnson's statement that he considered his "tankering duties" to be his "primary duties," Johnson does not dispute that he was a member of the vessel's crew and assigned deckhand responsibilities. Canal Barge's evidence made it clear that Johnson's duties as a tankerman were performed in addition to his duties as a deckhand—because a transfer of liquid cargo could take more than one 6-hour watch period to complete, Johnson and the other tankerman would relieve each other in supervising the transfer upon the expiration of their watch time. Conversely, even if a liquid cargo transfer was not in progress when it was Johnson's time on watch, he would nonetheless assume his watch duty and, as the only deckhand on watch, "perform deck crew duties" and "all the nautical functions of a deckhand" during that allotted time. In addition, Johnson handled lines and prepared the tow when going through locks on the waterways. While transporting liquid cargo, Johnson did maintain the additional responsibility of ensuring that the cargo was maintained at the proper temperature and pressure on the barges, but there is no evidence that he did so in lieu of his basic deckhand responsibilities.

### C. Johnson's attempt to distinguish *Coffin* is unsuccessful.

Essentially, Johnson now contends that Canal Barge is not entitled to summary judgment because—unlike the plaintiff in *Coffin*—he does <u>not</u> concede that his duties of supervising the transportation, loading, and unloading the hazardous liquid cargo were services "primarily offered to aid the vessel as a means of transportation." Johnson points

to his own declaration, as well as various Canal Barge training materials and job descriptions, to contend that his services were offered "primarily" to avoid pollution and toxic spills, not to aid the vessel in navigation.

Further, Johnson contends that Canal Barge must prove here that vessel-based tankermen such as himself "had the same authority and primary responsibilities as Captains and Pilots." Johnson then points to evidence that "other crew members were primarily responsible for the operation and navigation of Canal's vessels." Johnson's arguments fail on both counts.

Johnson's arguments are based upon a misunderstanding of the DOL regulation at the heart of *Coffin* and other FLSA "seamen" cases— a seaman is not defined as one who participates or controls the navigation of the vessel. If that were the case, then a vessel-based cook could never be a seaman. *See, e.g., Coffin*, 771 F.3d at 283 (citing *Martin v. Bedell*, 955 F.2d 1029, 1036 (5th Cir. 1992) (noting, "We recognized that a vessel-based cook is usually a seaman because he usually cooks for seamen.").

Based upon its fact-intensive inquiry into Johnson's duties, based upon the character of the work he actually performed, the Court finds that there is no genuine dispute of material fact as to Johnson's status as a seaman under the FLSA—the uncontroverted evidence shows that Johnson's job duties, taken as a whole, constituted seaman work.

## CONCLUSION

After considering the motion for summary judgment filed by Defendant in this case, the response, the reply, and the arguments of counsel, the Court finds that there is

no genuine dispute as to a material fact on Johnson's claims, and Canal Barge is entitled to judgment as a matter of law on these claims.

Accordingly, it is hereby **ORDERED** that Canal Barge's motion for summary judgment is **GRANTED,** and all of Johnson's claims are **DISMISSED, with prejudice**.

SIGNED at Galveston, Texas, this 5th day of February, 2016.

_____
George C. Hanks Jr.
United States District Judge